## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br>U.S. Department of Justice<br>Antitrust Division<br>1401 H Street, N.W., Suite 8000<br>Washington, D.C. 20530<br><br>*Plaintiff,*<br><br>v.<br><br>COMMSCOPE, INC.<br>1100 CommScope Place SE<br>Hickory, North Carolina 28603<br><br>and<br><br>ANDREW CORPORATION<br>3 Westbrook Corporate Center, Suite 900<br>Westchester, IL 60154<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil antitrust action to enjoin the proposed acquisition of Andrew Corporation ("Andrew") by CommScope, Inc. ("CommScope") and alleges as follows:

1.    CommScope is a large manufacturer of wire and cable products used by, among others, telecommunications companies. CommScope is the leading manufacturer of drop cable in the United States, with a market share of approximately 60 to 70 percent. "Drop cable" is coaxial cable used by cable television providers to connect their transmission systems to their

customers' premises and equipment inside the customers' premises. Drop cable sales average approximately $500 million a year in the United States.

2.      Andrew is a global designer, manufacturer and supplier of communications equipment and systems. Andrew was a manufacturer of drop cable until it sold this business in March 2007 to Andes Industries, Inc. ("Andes"). Andes' subsidiary, PCT International, Inc. ("PCT"), is a manufacturer of broadband hardware products used with drop cable installations. PCT and another Andes subsidiary, PCT Broadband Communications (Yantai) Co. Ltd. ("PCTY"), manufacture and sell drop cable. As a result of two transactions between Andrew and Andes, Andrew holds thirty (30) percent of Andes' equity and voting shares, a warrant that could allow it to increase its share holdings, and several Andes' notes of indebtedness. Andrew also has certain governance rights, including the right to appoint one of Andes' three board members.

3.      On June 26, 2007, defendants CommScope and Andrew entered into an Agreement and Plan of Merger, pursuant to which CommScope will acquire Andrew in an all-stock transaction valued at approximately $2.6 billion.

4.      As a result of the proposed acquisition, CommScope will obtain a 30 percent ownership interest in, and the right to appoint members to the board of directors of, one of its most significant competitors in the development, manufacture, and sale of drop cable. In addition, given its ownership of shares, warrants and debt instruments, and its governance rights, it will be able to exert substantial control over Andes. Therefore, CommScope's acquisition of Andrew would violate Section 7 and Section 8 of the Clayton Act because it would substantially lessen competition in the market for drop cable and would create interlocking directorates between competing companies.

2

## I.  JURISDICTION AND VENUE

5.      This action is filed by the United States under Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain the violation by defendants of Section 7 and Section 8 of the Clayton Act, 15 U.S.C. §§ 18, 19.

6.      Defendant CommScope and defendant Andrew both manufacture and sell telecommunications products throughout the United States.  Defendants are engaged in interstate commerce and in activities substantially affecting interstate commerce.  This Court has jurisdiction over this action and the defendants pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and  28 U.S.C. §§ 1331, 1337(a), and 1345.

7.      Defendants transact business and are found within the District of Columbia. Venue is proper in the district under 15 U.S.C. § 22, and  28 U.S.C. § 1391(c).  Defendants acknowledge personal jurisdiction in the District of Columbia and consent to venue.

## II.  DEFENDANTS

8.      Defendant CommScope, with its headquarters in Hickory, North Carolina, is a corporation organized and existing under the laws of the state of Delaware.  CommScope is a major manufacturer and provider of wire and cable products.  For fiscal year 2006, it reported total revenues in excess of $1.6 billion, with $550 million coming from its broadband business segment, which supplies cable and hardware products to cable television and telecommunications companies.

9.      Defendant Andrew, with its headquarters in Westchester, Illinois, is a corporation organized and existing under the laws of the state of Delaware.  Andrew is a major manufacturer and supplier of antenna and cable products and products for wireless communication systems.

For fiscal year 2006, it reported total sales in excess of $2.1 billion, with approximately $1.3 billion coming from its antenna and cable business segment.

10.    Andrew holds extensive interests in, and the means to exercise effective control over, Andes and its subsidiaries, PCT and PCTY.  Andrew owns shares of Andes equal to 30 percent of Andes' equity.  It holds a warrant to purchase up to ten percent more of Andes' equity. It holds three notes of indebtedness issued by Andes and Andes' subsidiaries, in a total amount of almost $16 million.  Andrew currently designates one member of Andes' three-member board of directors.  After CommScope acquires Andrew, the combined firm will have the right to designate two members and, jointly with another Andes' shareholder, to select two more members of Andes' board, which will then consist of seven members.  Andes and Andrew also have entered into an Amended and Restated Investor Rights Agreement (the "IRA") which effectively requires, and will continue to require, Andrew's approval for a wide range of Andes' corporate actions.

### III.  VIOLATION OF SECTION 7 OF THE CLAYTON ACT: ACQUISITION SUBSTANTIALLY LESSENING COMPETITION

#### A.    Relevant Product Market

11.    Drop cable is 75 ohm coaxial cable used by cable television companies to connect their transmission systems with their customers' premises and equipment inside the customers' premises. Drop cable consists of a plastic jacket, metal braid and foil shielding, a dielectric layer, and a center conductor.  Drop cable is used by cable television companies in three different kinds of locations: (1) in the air between outside poles and the exteriors of the customers' premises; (2) underground between buried transmission systems and the exteriors of the customers'

4

premises; and (3) inside the customers' premises to connect the exterior cables with customer-premises devices. Drop cable strung between outside poles and the exteriors of the customers' premises typically contains an ultraviolet ("UV") protectant in the jacket and a steel wire, called a "messenger," inside the cable to reduce flexing; much of this aerial cable also incorporates anti-corrosion protection for the metal shielding. Drop cable used underground typically is "flooded" with a gel compound in order to prevent water ingress and corrosion.

12.    No matter how it is used, all drop cable purchased by cable television companies is distinguished from other 75 ohm coaxial cable, which is usually called "commodity" cable. Drop cable must meet Society of Cable Television Engineers ("SCTE") and other cable television industry standards. Those standards address, inter alia, durability, uniformity, electrical conduction and signal shielding. Signal shielding standards address the ability of the cable to prevent signal leakage outside the cable, as well as leakage into the cable of extraneous outside signals. Compliance with SCTE and other industry standards assures cable television companies that the drop cable they buy will not require frequent replacement, will fit with the other components of their systems, can readily be handled by a cable system's installers and technicians, and, most importantly, will deliver a strong and interference-free signal. Because it must meet SCTE and other industry standards, drop cable is substantially more difficult to manufacture than commodity cable.

13.    A small but significant increase in the price of drop cable would not cause cable television companies to substitute commodity cable so as to make such a price increase unprofitable. Cable television companies could not use commodity cable without: substantially increasing the cost and difficulty of installing and servicing the cable in their systems, and

5

seriously jeopardizing their relationships with their own customers because of poor signal quality. In addition, commodity cable typically lacks the UV and anti-corrosion protection, and interior messengers, usually required for aerial drop cable, and the flooded gel compounds typically required for underground drop cable.

14.    Accordingly, the development, manufacture, and sale of drop cable is a line of commerce and a relevant product market within the meaning of Section 7 of the Clayton Act.

**B.    Geographic Market**

15.    The United States is a distinct geographic market for the sale of drop cable. SCTE and cable televison industry standards are designed to meet the needs of cable television companies operating in the United States. Although PCTY and CommScope manufacture drop cable in China for sale in the United States, no foreign companies make drop cable that conforms to SCTE and United States cable television industry standards, and no foreign companies sell drop cable to cable television companies in the United States. In addition, cable television companies in the United States require their suppliers to have a substantial presence within the United States, including distribution facilities and service infrastructures. No foreign company maintains such a presence for drop cable in the United States. Therefore, a small but significant increase in the price of drop cable would not cause cable television companies in the United States to substitute purchases from companies who operate outside the United States in sufficient quantities so as to make such a price increase unprofitable. Accordingly, the United States is a relevant geographic market within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18.

**C.    Anticompetitive Effects**

16.    The proposed transaction, including CommScope's acquisition of Andrew's

6

interests in Andes, would substantially lessen competition in the market for drop cable in the United States. The market for drop cable is already highly concentrated. There are only four companies that provide drop cable to cable television companies in the United States. CommScope is the leading manufacturer, with a market share of between 60 and 70 percent. PCT is the third largest manufacturer with about a four percent market share. PCT is having a significant impact in the market because of its low pricing and ability to offer drop cable with dry anti-corrosion protection.

17.    The full product lines offered by CommScope and PCT make them each other's closest competitors for many customers. Of the four manufacturers, only CommScope and PCT offer aerial drop cable in which a dry chemical coating is applied to the cable's braided metal shield to prevent corrosion of the metal. The processes by which both firms make products in this category -- called Brightwire by CommScope and Z-Wire by PCT -- are protected by patent. Many cable television firms need or prefer the dry anti-corrosion protection offered by Brightwire or Z-Wire. This is especially true for firms whose cable television systems are located in areas prone to metal oxidation, such as areas near sea coasts.

18.    Competition between PCT and CommScope in the sale of drop cable has benefitted consumers. The competition by PCT and its predecessor Andrew in the drop cable market has constrained CommScope's pricing. The prices charged by Andrew and PCT generally have been five to ten percent lower than those charged by CommScope and other competitors. Andrew's and later, PCT's, market share has been increasing as a greater number of cable television firms have approved their products for purchase.

19.    PCT and CommScope also compete with each other in product innovation.

7

CommScope developed the first dry anti-corrosion protected drop cable product, Brightwire.

Andrew developed Z-Wire specifically to compete for sales that would otherwise have gone to

Brightwire. PCT and CommScope have continued to develop new technology in drop cable.

20.     Through the proposed acquisition of Andrew by CommScope, CommScope will

acquire a substantial interest in, as well as substantial control over, one of its most significant

drop cable competitors. In addition to holding a 30 percent interest in Andes, Andrew holds

significant rights under the IRA to control core business decisions and to obtain critical

confidential competitive information from Andes and PCT. Through the acquisition,

CommScope would gain, among other rights, the rights to appoint Andes' board members and to

veto important business decisions by Andes, such as issuing capital stock, changing executive

compensation, and making certain acquisitions of other corporations. Post-merger, CommScope

would likely have the ability and incentive to coordinate the activities of CommScope and PCT,

and/or undermine PCT's ability to compete against CommScope on price and innovation. Such

activity would likely result in a significant lessening of competition. This loss of competition

would likely result in higher prices, reduced innovation, and fewer choices for customers.

**D.     Entry**

21.     Successful entry into the drop cable market would not be timely, likely or

sufficient to deter the anticompetitive effects resulting from this transaction. The drop cable

industry has been characterized by firms exiting and failed entry attempts. Andrew itself began

the process of entering the market in 1997, and only now, ten years later, has its successor, PCT,

achieved a four percent market share.

22.     Timely entry sufficient to replace the market impact of PCT would be difficult for

8

several reasons. Any new manufacturer would have to develop a product line and set up a

manufacturing facility, submit sample products for the extensive laboratory and field tests

required by all substantial cable television firms, and then undergo the lengthy process of

attempting to sell the products to those companies. PCT's success is due in part to its ability to

offer a full line of drop cable products. A new entrant could not duplicate that success unless it

could offer drop cable with dry anti-corrosion protection. The Brightwire and Z-Wire products

are both protected by patent. Development of a new process which does not infringe on those

patents would likely be time-consuming and difficult.

### IV. VIOLATION OF SECTION 8 OF THE CLAYTON ACT: INTERLOCKING DIRECTORATES

23.    CommScope is a corporation engaged in commerce. It manufactures, among other

things, drop cable and, through a wholly-owned subsidiary, hardware products associated with

drop cable installations. Andes, through its wholly-owned subsidiaries, PCT and PCTY, is

engaged in commerce. PCT and PCTY manufacture drop cable and hardware products

associated with drop cable installations. Both CommScope and PCT sell drop cable and

associated hardware products throughout the United States. With respect to those products,

CommScope and PCT are, by virtue of their businesses and locations of operations, competitors,

and the elimination of competition by agreement between them would constitute a violation of

the antitrust laws.

24.    Both CommScope and Andes have capital, surplus and undivided profits in excess

of $24,001,000. Both CommScope and Andes had sales in their last fiscal years of products in

competition with products of the other exceeding $2,400,100. Each firm's annual competitive

sales of these products exceeded two percent of its total sales. The annual competitive sales of these products by each firm also exceeded four percent of its total sales.

25.    Section 6 of the IRA now conveys to Andrew a right to appoint one member of Andes' three-member board of directors. When CommScope completes its acquisition of Andrew, Section 6 requires Andes' board of directors to be reconstituted as a new board of seven members. At that time Section 6 will convey to Andrew, and by extension to CommScope, the right to designate two of the seven members of Andes' board of directors. In addition, Andrew, and by extension CommScope, will have the right to select, jointly with another Andes shareholder, two more members of Andes' board of directors.

26.    CommScope is a person within the meaning of Section 8 of the Clayton Act, 15 U.S.C. § 19. CommScope nominates the members of its own board of directors. Its nominees, designees and selectees for the Andes' board stand or will stand in its stead for the purposes of Section 8. CommScope will thus, when it completes its acquisition of Andrew, participate through its representatives both on its own board of directors and on the Andes' board of directors.

## V.  VIOLATIONS ALLEGED

### COUNT ONE

(Violation of Section 7 of the Clayton Act)

27.    Each and every allegation in paragraphs 1 through 26 of this Complaint is here realleged with the same force and effect as though said paragraphs were here set forth in full.

28.    CommScope and Andrew are hereby named as defendants on Count One of this Complaint.

10

29.    The effect of the proposed acquisition by CommScope of Andrew may be to lessen competition substantially in the development, manufacture, and sale of drop cable in the United States, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

30.    Unless restrained, the proposed acquisition by CommScope of Andrew likely will have the substantial anticompetitive effects set forth in ¶¶ 16- 20 above, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## COUNT TWO

### (Violation of Section 8 of the Clayton Act)

31.    Each and every allegation in paragraphs 1 through 26 of this Complaint is here realleged with the same force and effect as though said paragraphs were here set forth in full.

32.    CommScope and Andrew are hereby named as defendants on Count Two of this Complaint.

33.    The proposed acquisition by CommScope of Andrew, by conveying to CommScope rights to designate members of the board of directors of Andes will create interlocking directorates between competing corporations, in violation of Section 8 of the Clayton Act, 15 U.S.C. § 19.

## VI.  REQUESTED RELIEF

34.    Plaintiff requests:

a.    that the proposed acquisition be adjudged to violate Section 7 and Section 8 of the Clayton Act, 15 U.S.C. §§ 18, 19;

b.    that the defendants and all persons acting on their behalf be permanently enjoined and restrained from carrying out the Agreement and Plan of Merger dated June 26,

2007, or from entering into or carrying out any agreement, understanding, or plan by which CommScope would merge with or acquire Andrew, and that includes any ownership interests or governance rights in Andes;

      c.     that defendants and all persons acting on their behalf be enjoined and restrained from violating Section 8 of the Clayton Act, 15 U.S.C. § 19.

      d.     that the United States be awarded the costs of this action;

      e.     that the United States be granted such other and further relief as the Court may deem just and proper.

Dated:                                              Respectfully Submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA:

Thomas O. Barnett (D.C. Bar No. 426840)          Alvin H. Chu
Assistant Attorney General                        Michael Hirrel (D.C. Bar No. 940353)
Antitrust Division                                Brent Marshall
                                                  Peter Gray
J. Robert Kramer II
Director of Operations                            Attorneys, Telecommunications & Media
Antitrust Division                                Enforcement Section
                                                  Antitrust Division
Nancy M. Goodman (D.C. Bar No. 251694)            U.S. Department of Justice
Chief, Telecommunications & Media                 City Center Building
Enforcement Section                               1401 H Street, N.W., Suite 8000
Antitrust Division                                Washington, D.C.  20530
                                                  (202) 514-5621
Laury Bobbish                                     Facsimile:  (202) 514-6381
Assistant Chief, Telecommunications &
Media Enforcement Section
Antitrust Division

JS-44
(Rev.1/05 DC)

**ORIGINAL**
RCL 07 2200

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America    1100l | CommScope, Inc., Andrew Corporation |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) ___ Catawba, NC NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Alvin H. Chu
Michael Hirrel
U.S. Dept. of Justice, Antitrust Division
1401 H. Street, N.W., Suite 8000
Washington, D.C. 20530

Case: 1:07-cv-02200
Assigned To : Lamberth, Royce C.
Assign. Date : 12/6/2007
Description: Antitrust

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (x) 1 U.S. Government Plaintiff
- ( ) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ( ) 1 | ( ) 1 | Incorporated or Principal Place of Business in This State | ( ) 4 | ( ) 4 |
| Citizen of Another State | ( ) 2 | ( ) 2 | Incorporated and Principal Place of Business in Another State | ( ) 5 | ( ) 5 |
| Citizen or Subject of a Foreign Country | ( ) 3 | ( ) 3 | Foreign Nation | ( ) 6 | ( ) 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**(x) A. Antitrust**

- (x) 410 Antitrust

**( ) B. Personal Injury/Malpractice**

- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 368 Asbestos Product Liability

**( ) C. Administrative Agency Review**

- [ ] 151 Medicare Act

Social Security:
- [ ] 861 HIA ((1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g)
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g)

Other Statutes
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

**( ) D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**( ) E. General Civil (Other)    OR    ( ) F. Pro Se General Civil**

Real Property
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

Personal Property
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

Bankruptcy
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

Prisoner Petitions
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

Property Rights
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

Federal Tax Suits
- [ ] 870 Taxes (US plaintiff or defendant
- [ ] 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- [ ] 610 Agriculture
- [ ] 620 Other Food &Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

Other Statutes
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 470 Racketeer Influenced & Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 900 Appeal of fee determination under equal access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

---

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Sections 7 and 8 of the Clayton Act, 15 U.S.C. Sections 18, 19; substantial lessening of competition in drop cable; unlawful interlocking directorates.

---

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** _____ Check YES only if demanded in complaint    **JURY DEMAND:**    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE December 6, 2007    SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.