

**ORIGINAL**

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| United States of America, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Filed: **07 2200** |
| | ) | |
| CommScope, Inc., and | ) | |
| Andrew Corporation, | ) | **FILED** |
| | ) | |
| Defendants. | ) | DEC - 6 2007 |
| | ) | NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT |

### HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I. Definitions

As used in this Hold Separate Stipulation and Order:

A.      "CommScope" means defendant CommScope, Inc., a Delaware corporation with its headquarters in Hickory, North Carolina, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

B.      "Andrew" means defendant Andrew Corporation, a Delaware corporation with its headquarters in Westchester, Illinois, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C. "Acquirer" means the entity or person to whom defendants divest their interests in the Andes Holdings.

D. "Andes" means Andes Industries, Inc., a Nevada corporation with its headquarters in Gilbert, Arizona, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

E. "PCT" means PCT International, Inc., a wholly-owned subsidiary of Andes.

F. "Yantai Factory" means the factory in Yantai City, China formerly operated by Andrew Broadband Telecommunications (Yantai) Co., Ltd., now operated by PCT Broadband Communications (Yantai) Co. Ltd., a subsidiary of Andes located in Yantai City, China, and used to manufacture, inter alia, coaxial cable.

G. "IRA" means the Amended and Restated Investor Rights Agreement dated March 30, 2007 between Andes and Andrew.

H. "Andes Holdings" means stock representing Andrew's entire ownership interest in Andes, the Z-Wire IP, as well as all notes of indebtedness in favor of Andrew by Andes, and warrants to acquire additional stock of Andes, including but not limited to:

1. Senior Note dated April 2, 2007 issued in favor of Andrew for the amount of $9,035,000;

2. Senior Note dated March 30, 2007 issued in favor of Andrew Corporation Mauritius for the amount of $5,592,000;

3. Promissory Note, dated September 29, 2006, issued in favor of Andrew for the amount of $1,016,000; and

   4. Warrant to Acquire Common Stock of Andes dated April 2, 2007, held by Andrew and Andrew Corporation Mauritius.

  I. "Drop Cable" means 75 ohm coaxial cable used by cable television companies to connect their transmission systems with their customers' premises and equipment inside the customers' premises.

  J. "Z-Wire IP" means all intellectual property concerning the "Z-Wire" product now made and sold by PCT and PCT Broadband Communications (Yantai) Co. Ltd. This intellectual property shall include, but not be limited to, the "Z-Wire" Trademark, Serial No. 78,658,023 and the patent, U.S. Patent No. 7,084,343 B1, dated August 1, 2006, concerning the Z-Wire product.

## II. Objectives

  The proposed Final Judgment filed in this case is meant to ensure the prompt divestiture by defendants of the Andes Holdings for the purpose of ensuring that Andes remains an independent, viable competitor providing Drop Cable in the United States in order to remedy the anticompetitive effects that the United States alleges would otherwise result from CommScope's acquisition of Andrew. This Hold Separate Stipulation and Order is intended to ensure that, prior to such divestiture, defendants take no steps to limit Andes' ability to operate as a competitively independent, economically viable, and ongoing business concern, that defendants do not influence Andes' business, and that competition is maintained during the pendency of the ordered divestiture.

## III. Jurisdiction and Venue

  This Court has jurisdiction over the subject matter of this action and over each of the parties hereto, and venue of this action is proper in the United States District Court for the

District of Columbia. The complaint states a claim upon which relief may be granted against Defendants under Section 7 and Section 8 of the Clayton Act, 15 U.S.C. §§ 18, 19.

### IV. Compliance With and Entry of Final Judgment

A. The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act (15 U.S.C. § 16), and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on defendants and by filing that notice with the Court.

B. Defendants shall abide by and comply with the provisions of the proposed Final Judgment, pending entry of the Final Judgment by the Court, or until expiration of time for all appeals of any Court ruling denying entry of the proposed Final Judgment, and shall, from the date defendants signed this Stipulation, comply with all the terms and provisions of the proposed Final Judgment as though the same were in full force and effect as an order of the Court.

C. Defendants shall not consummate the transaction sought to be enjoined by the Complaint herein before the Court has signed this Hold Separate Stipulation and Order.

D. This Stipulation shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E. In the event (1) the United States has withdrawn its consent, as provided in Section IV(A) above, or (2) the proposed Final Judgment is not entered pursuant to this Stipulation, the time has expired for all appeals of any Court ruling denying entry of the proposed

Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Stipulation, and the making of this Stipulation shall be without prejudice to any party in this or any other proceeding.

    F.    Defendants represent that the divestiture ordered in the proposed Final Judgment can and will be made, and that they later will raise no claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V. Andes Governance

    A.    Until the divestiture of the Andes Holdings required by the Final Judgment has been completed, defendants shall treat the Andes Holdings as a passive investment. Except as permitted by the United States pursuant to Paragraph V(B), below, defendants may not exercise any rights relating to the governance of Andes, including but not limited to: (i) voting or permitting to be voted any Andes shares that defendants own or using or attempting to use any ownership interest in Andes to exert any influence over Andes, except as necessary to carry out defendants' obligations under this Hold Separate Stipulation and Order and the Final Judgment; (ii) electing, nominating, appointing or otherwise designating or participating as officers or directors; (iii) participating, as a member of the Board of Directors or otherwise, in any meetings of the Board of Directors; (iv) participating in any committees; and (v) communicating to or receiving from any officer, director, manager, employee, or agent of Andes any nonpublic information regarding any aspect of Andes' business, including any plans or proposals with respect thereto, except to the extent necessary to meet legal or regulatory requirements, and

except the information specified in Paragraph V(B) below, to the extent necessary to effectuate the divestiture contemplated by the Final Judgment.

B. Defendants may not exercise any rights, nor shall their approval be required, under Sections 2, 3.1, 3.3, 4.1(a), 4.2, 4.3, 4.4, 5, and 6 of the IRA. Defendants may, however, continue to receive such notices of actual and proposed Andes actions as required by the IRA. Defendants may receive information from Andes under Section 3.1 of the IRA only to the extent that similar information would ordinarily appear in publicly available information issued by a publicly held corporation. Defendants may exercise their "piggyback" registration rights under Section 2.2 of the IRA, but they may not sell or dispose any of their shares except pursuant to the Final Judgment. Defendants' third party agent may receive and use information pursuant to Section 3.1 of the IRA only to the extent allowed under Section VIII(B) of the Final Judgment. Notwithstanding the foregoing, defendants or the trustee may notify the United States if either the defendants or the trustee believes that they must exercise rights under the IRA in order to prevent oppression, disproportionate diminution in the value of the Andes Holdings or substantial reduction in the abilities of Andes and its subsidiaries to repay the notes within the Andes Holdings. The notice to the United States must specify with particularity the circumstances requiring exercise of the rights, which rights would be exercised, and in what manner the rights will be exercised. Defendants or the trustee may then exercise the specified rights only if, and to the extent that, the United States consents in writing. The United States shall state in writing within 15 days of receiving defendants' notice whether it consents or not.

C. Within two (2) business days after CommScope acquires Andrew, John DeSana (or any other person representing defendants) shall resign from the Board of Directors of Andes

and from any committees of the Board of Directors. Defendants may, and if necessary shall, exercise their shareholder rights to vote for management's nominee to fill the vacant board seat.

D. Defendants shall not acquire, directly or indirectly, additional shares of Andes stock, except pursuant to a stock split, stock dividend, rights offering, recapitalization, reclassification, or merger, consolidation, corporate reorganization, or other similar transaction that does not increase defendants' proportion of the outstanding equity of Andes. Any additional equity of Andes that defendants acquire by such means shall be treated as part of the Andes Holdings and be subject to the divestiture obligations of Section VI(A) of the Final Judgment.

E. Defendants shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, sell, lease, assign, transfer, pledge or otherwise dispose of any of the Andes Holdings.

F. Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the Final Judgment to complete the divestiture pursuant to the Final Judgment to an Acquirer acceptable to the United States.

G. Defendants shall appoint a person or persons to oversee the Andes Holdings, and who will be responsible for defendants' compliance with this section. This person shall have complete managerial responsibility for the Andes Holdings, subject to the provisions of the Final Judgment and Hold Separate Stipulation and Order. In the event that such person is unable to perform his or her duties, defendants shall appoint, subject to the approval of the United States, a replacement within ten (10) working days. Should defendants fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement.

H.   Defendants shall not take any action that will jeopardize, delay or impede in any way the divestiture of the Andes Holdings.

I.   Until the divestiture required by the Final Judgment has been accomplished, and subject to the above provisions of this Section V:

1.   Defendants shall not take any steps that would interfere with Andes' ability to operate as a separate, independent, ongoing, economically viable, and active competitor in the provision of Drop Cable. Defendants' influence over Andes shall be limited to that necessary to carry out defendants' obligations under this Hold Separate Stipulation and Order and the Final Judgment, as permitted by the United States pursuant to Section V(B) of this Hold Separate Stipulation and Order, or as required by applicable law.

2.   Andrew shall continue to honor and comply fully with all contractual obligations, understandings, and formal or informal agreements (collectively "Agreements") that Andrew has with Andes. Those Agreements include the Technology License Agreement dated March 30, 2007 among Andrew, PCT and Andes, and the Trademark License Agreement dated March 30, 2007 among Andrew, PCT and Andes, and defendants shall not unreasonably interfere with the rights of Andes and PCT to use the intellectual property under those agreements. If defendants terminate (or if Andrew has already terminated) the Trademark License Agreement in accordance with its terms, they (or it) shall, at the option of Andes, before the termination becomes effective, grant Andes and PCT the license described in Section IV(E) of the Final Judgment to use the "Z-Wire" trademark, Serial No. 78,658,023.

3.   Defendants shall, at the option of Andes, continue to provide the services now provided pursuant to the Transition Services Agreement dated March 30, 2007, according to

the terms of that Agreement, until the end of February 2008. At the end of the period in which defendants provide transition services, defendants shall, at the option of Andes, provide a copy in a format acceptable to Andes from the relevant Andrew servers of all historic data concerning operation of the Yantai Factory. In any event, defendants shall maintain the operations software and the data on the servers for a period of two months after completion of the transition services period, and, during those two months, shall make available to Andes any information on the servers that is requested by Andes, except the licensed software itself. At the end of those two months, defendants shall erase from the servers all data relating to the operations of the Yantai Factory, but they may keep one copy of that data, which copy they shall place in the custody of their outside counsel. Defendants shall not access or use the Andes data on the servers or the copy for any purpose; provided, however, that, pursuant to a protective order issued by the Court, outside counsel and employees whose participation is necessary may access the Andes data to the extent necessary for the defense of a lawsuit or in connection with a regulatory or tax proceeding of which the defendants are, or one of them is, the subject.

4. To the extent that Andrew now provides services, materials or building space to Andes, defendants shall, at the option of Andes, continue to provide those services, materials and building space on the existing terms until the end of the period in which defendants provide transition services pursuant to Paragraph V(I)(3) above. During the period in which defendants continue to provide services to Andes, they may not reduce the quality or timeliness of those services, including services under both this and Paragraph V(I)(3).

J. Nothing in this Hold Separate Stipulation and Order shall prohibit defendants from seeking payment of the notes within the Andes Holdings or for services or products

supplied under the terms of any agreement with Andes, and taking action to collect any amounts past due under those agreements, including institution of legal proceedings to collect those overdue amounts; provided, however, that defendants may not undertake legal actions that would jeopardize the divestiture required by the Final Judgment or Andes' continuing viability, including, but not limited to, seeking accelerated payment of principal or other amounts not currently overdue or seeking to place Andes in involuntary bankruptcy; nor may defendants exercise any right under the Warrant to acquire additional Andes stock.

K.    This Hold Separate Stipulation and Order shall remain in effect until consummation of the divestiture required by the proposed Final Judgment or until further order of the Court.

Dated:

                                              Respectfully submitted,

FOR PLAINTIFF UNITED STATES

_/s/ Alvin H. Chu_

Alvin H. Chu
Michael Hirrel (DC Bar No. 940353)
Brent Marshall
Peter Gray
Attorneys, Telecommunications & Media
Enforcement Section
Antitrust Division

U.S. Department of Justice
City Center Building
1401 H Street, N.W., Suite 8000
Washington, D.C. 20530
(202) 514-5621
Facsimile: (202) 514-6381

FOR DEFENDANT COMMSCOPE, INC.

_/s/_

Douglas Baruch (D.C. Bar No. 414354)
Richard Park (D.C. Bar No. 458426)
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(212) 639-7064

Peter Guryan
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980
(212) 859-8477

FOR DEFENDANT ANDREW
CORPORATION

_John Roberti/CJK_

John Roberti (D.C. Bar No. 495718)
Christopher J. Kelly (D.C. Bar No. 474066)
Mayer Brown LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3285

# O R D E R

IT IS SO ORDERED by the Court, this _____6th_____ day of Dec, 2007.

_Royce C. Lamberth_
United States District Judge