## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | |
|        ) | |
| *Plaintiff,*       ) | |
|        ) | Case No. 1:07-CV-02200 (RCL) |
| v.       ) | |
|        ) | |
| COMMSCOPE, INC. and      ) | |
| ANDREW CORPORATION      ) | |
|        ) | |
| *Defendants.*      ) | |

## MOTION FOR ENTRY OF PROPOSED FINAL JUDGMENT AND
## MEMORANDUM IN SUPPORT

Pursuant to Section 2(e)-(f) of the Antitrust Procedures and Penalties Act ("the APPA" or "Tunney Act"), 15 U.S.C. §16(e)-(f), with the consent of the Defendants, the United States moves for entry of the proposed Final Judgment (copy attached) in this civil antitrust action.

### I.  The United States and the Defendants have complied with the APPA

Simultaneously with this motion, the United States is filing a Certificate of Compliance certifying that the parties have complied with all applicable provisions of the APPA, and that the waiting periods imposed by the APPA have expired.  The APPA prescribes a sixty-day period following publication of notice in the Federal Register for the submission of comments. 15 U.S.C. §§ 16(b) and (d).  The APPA also prescribes a sixty day waiting period following commencement of publication in a local newspaper before the Judgment may be entered. 15 U.S.C. § 16(c).  Notice of the proposed Final Judgment was published in the Federal Register on December 20, 2007.  Thus the sixty-day comment period ended on February 19, 2008. Notice of the proposed Final Judgment was published in a local newspaper commencing on

January 6, 2008.  Thus the sixty-day waiting period before the Final Judgment may be entered ended on March 6, 2008.

## II.  The Proposed Final Judgment Satisfies the "Public Interest" Standard

The United States has previously filed a Competitive Impact Statement (Dkt# 2).  There, the United States showed that entry of the proposed Final Judgment is in the public interest because it effectively remedies the Defendants' violations alleged in the Complaint, prevents recurrence of those violations, and promotes competition in the relevant market.  The public, including affected competitors and customers, has now had an opportunity to comment on the proposed Final Judgment as required by statute.

Before entering the proposed Final Judgment, the Court is to determine whether the Judgment "is in the public interest," See U.S.C. § 16(e).  In making that determination, the Court shall consider:

> A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and

> B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(3).

In its Competitive Impact Statement, the United States described the meaning and proper application of the public interest standard under the APPA and now incorporates those statements herein by reference.  The public, including affected competitors and customers, has had the opportunity to comment on the proposed Final Judgment as required by law.  No

comments were filed, and the proposed Final Judgment is within the range of settlements consistent with the public interest.

### III.  Conclusion

For the reasons set forth in this Memorandum and in the Competitive Impact Statement, the Court should find that the proposed Final Judgment is in the public interest. The Court should then enter the proposed Final Judgment.

Dated: April 29, 2008                                  Respectfully submitted,

                                                          /s/ Alvin H. Chu

                                                       Alvin H. Chu
                                                       United States Department of Justice
                                                       Antitrust Division
                                                       Telecommunications and Media
                                                       Enforcement Section
                                                       1401 H Street, N.W., Suite 8000
                                                       Washington, DC 20530
                                                       Telephone: (202) 305-8864
                                                       Facsimile: (202) 514-6381

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and further provided copies to the registrants via electronic mail:

> Douglas W. Baruch
> Fried, Frank, Harris, Shriver & Jacobson LLP
> 1001 Pennsylvania Avenue, NW Suite 800
> Washington, DC 20004
> (202) 639-7000
> Facsimile: (202) 639-7003
> Counsel for Defendants

>    /s/ Alvin H. Chu               

> Alvin H. Chu
> United States Department of Justice
> Antitrust Division
> Telecommunications and Media
> Enforcement Section
> 1401 H Street, N.W., Suite 8000
> Washington, DC 20530
> Telephone: (202) 305-8864
> Facsimile: (202) 514-6381

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) ) | Filed:  [Date Filed] |
| CommScope, Inc., and Andrew Corporation, | ) ) ) | |
| Defendants. | ) ) ) | |

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on December 6, 2007, the United States and defendants, CommScope, Inc. ("CommScope") and Andrew Corporation ("Andrew"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Andrew and CommScope to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires Andrew and CommScope to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestiture required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. **Jurisdiction**

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 and Section 8 of the Clayton Act, as amended (15 U.S.C. §§ 18, 19).

## II. **Definitions**

As used in this Final Judgment:

A.     "CommScope" means defendant CommScope, Inc., a Delaware corporation with its headquarters in Hickory, North Carolina, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

B.     "Andrew" means defendant Andrew Corporation, a Delaware corporation with its headquarters in Westchester, Illinois, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

2

C.    "Acquirer" means the entity or person to whom defendants divest their interests in the Andes Holdings.

D.    "Andes" means Andes Industries, Inc., a Nevada corporation with its headquarters in Gilbert, Arizona, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

E.    "PCT" means PCT International, Inc., a wholly-owned subsidiary of Andes.

F.    "Yantai Factory" means the factory in Yantai City, China formerly operated by Andrew Broadband Telecommunications (Yantai) Co., Ltd., now operated by PCT Broadband Communications (Yantai) Co. Ltd., a subsidiary of Andes located in Yantai City, China, and used to manufacture, inter alia, coaxial cable.

G.    "IRA" means the Amended and Restated Investor Rights Agreement dated March 30, 2007 between Andes and Andrew.

H.    "Andes Holdings" means stock representing Andrew's entire ownership interest in Andes, the Z-Wire IP, as well as all notes of indebtedness in favor of Andrew by Andes, and warrants to acquire additional stock of Andes, including but not limited to:

1.  Senior Note dated April 2, 2007 issued in favor of Andrew for the amount of $9,035,000;

2.  Senior Note dated March 30, 2007 issued in favor of Andrew Corporation Mauritius for the amount of $5,592,000;

3.  Promissory Note, dated September 29, 2006, issued in favor of Andrew for the amount of $1,016,000; and

4.  Warrant to Acquire Common Stock of Andes dated April 2, 2007, held by Andrew and Andrew Corporation Mauritius.

3

I. "Youtsey" means Steve Youtsey, Chief Executive Officer of and stockholder in Andes.

J. "Drop Cable" means 75 ohm coaxial cable used by cable television companies to connect their transmission systems with their customers' premises and equipment inside the customers' premises.

K. "Z-Wire IP" means all intellectual property concerning the "Z-Wire" product now made and sold by PCT and PCT Broadband Communications (Yantai) Co. Ltd. This intellectual property shall include, but not be limited to, the "Z-Wire" Trademark, Serial No. 78,658,023 and the patent, U.S. Patent No. 7,084,343 B1, dated August 1, 2006, concerning the Z-Wire product.

## III. Applicability

A. This Final Judgment applies to CommScope and Andrew, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B. If, prior to complying with Sections IV and V of this Final Judgment, defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Andes Holdings, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirer of the assets divested pursuant to this Final Judgment.

## IV. Divestitures

A. Defendants are ordered and directed, within 90 calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Andes Holdings in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States, in its sole discretion. Divestiture

4

of all the Andes Holdings shall be made to one Acquirer. The United States, in its sole discretion, may agree to one or more extensions of this time period, not to exceed 60 calendar days in total, and shall notify the Court in such circumstances. If within the initial period for divestiture, plus any extensions, an agreement with a prospective Acquirer has been reached and the prospective Acquirer, and the terms of the acquisition agreement, have been approved by the United States, and the defendants have provided the written notice of intent to sell required by Section 4.1(b) of the IRA ("IRA 4.1(b)"), the time for completing the divestiture shall automatically be extended, in order to allow defendants to comply with the right of first refusal provision in IRA 4.1(b). The period of this extension shall not exceed five (5) days past the date on which both Andes and Youtsey have failed to timely (a) deliver a Right of First Refusal ("ROFR") Notice accompanied by a Reasonable Assurances Letter pursuant to IRA 4.1(b); or (b) consummate the purchase of Andrew's ownership interest in Andes pursuant to IRA 4.1(b). Defendants agree to use their best efforts to divest the Andes Holdings as expeditiously as possible.

B.    In accomplishing the divestiture ordered by this Final Judgment, defendants promptly shall make known, by usual and customary means, the availability of the Andes Holdings. Defendants shall inform any person making inquiry regarding a possible purchase of the Andes Holdings that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective acquirers, subject to customary confidentiality assurances, all information and documents that are available to them relating to the Andes Holdings or to Andes, to the extent permitted by Sections IV(C) and VIII(B) below or by Sections V(A) and V(B) of the Hold Separate and Stipulation Order, and customarily provided in a due diligence process, except such information or

5

documents subject to the attorney-client or work-product privileges. Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

C.    Defendants shall, at the option of Andes, continue to provide the services now provided pursuant to the Transition Services Agreement dated March 30, 2007, according to the terms of that Agreement, until the end of February 2008. At the end of the period in which defendants provide transition services, defendants shall, at the option of Andes, provide a copy in a format acceptable to Andes from the relevant Andrew servers of all historic data concerning operation of the Yantai Factory. In any event, defendants shall maintain the operations software and the data on the servers for a period of two months after completion of the transition services period, and, during those two months, shall make available to Andes any information on the servers that is requested by Andes, except the licensed software itself. At the end of those two months, defendants shall erase from the servers all data relating to the operations of the Yantai Factory, but they may keep one copy of that data, which copy they shall place in the custody of their outside counsel. Defendants shall not access or use the Andes data on the servers or the copy for any purpose; provided, however, that, pursuant to a protective order issued by the Court, outside counsel and employees whose participation is necessary may access the Andes data to the extent necessary for the defense of a lawsuit or in connection with a regulatory or tax proceeding of which the defendants are, or one of them is, the subject.

D.    To the extent that Andrew now provides services, materials or building space to Andes, defendants shall, at the option of Andes, continue to provide those services, materials and building space on the existing terms until the end of the period in which defendants provide transition services pursuant to Section IV(C) above. During the period in which defendants

6

continue to provide services to Andes, they may not reduce the quality or timeliness of those services, including services under both this and Section IV(C) above.

E.    Defendants shall divest to the Acquirer, as part of the Andes Holdings, the Z-Wire IP. The Acquirer shall acquire this intellectual property subject to Andrew's rights and obligations under the Technology Licensing Agreement dated March 30, 2007, between Andrew and PCT Broadband Communications (Yantai) Co. Ltd.  Andrew shall assign its part in that agreement to the Acquirer, the Acquirer shall assume Andrew's position as licensor under the agreement, and PCT Broadband Communications (Yantai) Co. Ltd. shall remain the licensee.  As part of the divestiture of the Z-Wire IP, the Acquirer shall offer defendants a non-exclusive, royalty-free license to use U.S. Patent No. 7,084,343 B1, provided that the license does not permit defendants to use the Z-Wire IP to develop, make, use or sell Drop Cable products and provided that the license does not directly or indirectly affect Andes' ability to use the Z-Wire IP. Prior to the divestiture of the Z-Wire IP, defendants shall, at the option of Andes, grant Andes and PCT a perpetual, worldwide and royalty-free license to use the "Z-Wire" trademark, Serial No. 78,658,023, and the Z-Wire trademark, Serial No. 78,658,023 shall be divested to the Acquirer subject to that license.

F.    Defendants shall not take any action that will jeopardize, delay or impede in any way the divestiture of the Andes Holdings.

G.    Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Andes Holdings, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that Andes will remain a viable competitor in the market for Drop Cable, and that the divestiture will remedy the competitive harm alleged in the Complaint

7

resulting from CommScope's acquisition of Andrew. In addition, the divestiture, whether pursuant to Section IV or Section V of this Final Judgment, shall be made to an Acquirer that in the United States' sole judgment has the intent and capability of investing in Andes in such a manner as to support the continued competitive operations of its Drop Cable business and shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between the Acquirer and defendants unreasonably raises Andes' costs, lowers Andes' efficiency, or otherwise interferes in the ability of Andes to compete effectively.

H.    Upon completion of the divestiture to the Acquirer, neither the defendants nor the trustee shall have any rights under the IRA.

I.    Nothing in this Final Judgment shall prohibit defendants from seeking payment of the notes within the Andes Holdings or for services or products supplied under the terms of any agreement with Andes, and taking action to collect any amounts past due under those agreements, including institution of legal proceedings to collect those overdue amounts; provided, however, that defendants may not undertake legal actions that would jeopardize the divestiture required by this Final Judgment or Andes' continuing viability, including, but not limited to, seeking accelerated payment of principal or other amounts not currently overdue or seeking to place Andes in involuntary bankruptcy; nor may defendants exercise any right under the Warrant to acquire additional Andes stock.

## V. **Appointment of Trustee**

A.    If defendants have not divested the Andes Holdings within the time period specified in Section IV(A), defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Andes Holdings.

B.     After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Andes Holdings. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C.     Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.     The trustee shall serve at the cost and expense of defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to CommScope (or to Andrew if Andrew has not been acquired by CommScope at that time) and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Andes Holdings and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E.    Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to Andrew's personnel responsible for its Andes investment and to documents and information concerning Andes in Andrew's possession, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F.    After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, the Andes Holdings, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Andes Holdings.

G.    If the trustee has not accomplished the divestiture ordered under the this Final Judgment within six months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States which shall have the right to make

10

additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. Notice of Proposed Divestiture

A.       Within two (2) business days following execution of a definitive divestiture agreement, defendants or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Andes Holdings, together with full details of the same.

B.       Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendants, the proposed Acquirer, any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.       Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided with the additional information requested from defendants, the proposed Acquirer, any third party, and the trustee, whichever is later, the United States shall provide written notice to defendants and the trustee, if there is one, stating

11

whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Section V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by defendants under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. Hold Separate

A.    Until the divestiture required by this Final Judgment has been accomplished, the defendants shall be bound by, and shall take all steps necessary to comply with, the Hold Separate Stipulation and Order entered by this Court. The Hold Separate Stipulation and Order shall survive entry of this Final Judgment until the divestiture has been completed.

B.    Defendants shall not access or use any written confidential information provided to defendants by Andes about Andes' business operations, or access or use any written confidential information still possessed by Andrew about its former Drop Cable business and the Yantai Factory. Outside counsel for defendants and employees whose participation is necessary, may, however, access such information to the extent necessary to meet legal or regulatory requirements or to conduct a defense of a lawsuit, but only subject to a protective order by the Court. Defendants may also designate a third party agent approved by the United States to access on their behalf such confidential business information to which defendants are otherwise entitled

12

for the purpose of sharing that information with bona fide prospective acquirers of the Andes

Holdings. The agent shall identify to Andes in advance all prospective acquirers with whom

confidential information will be shared, and shall, at Andes' request, require those prospective

acquirers to execute confidentiality agreements binding them to keep the information confidential

and to use it for no purpose other than to evaluate the prospective acquisition. The agent may not

in any circumstances share any Andes confidential information with defendants.

C.    Defendants shall take no action that would diminish the value of the Andes

Holdings.

## IX. Survival of Agreements

The Trademark License Agreement dated March 30, 2007 among Andrew, PCT and

Andes, shall remain in force according to its terms. CommScope shall comply with Andrew's

obligations under that agreement. Defendants shall not unreasonably interfere with the rights of

Andes and PCT to use the subject intellectual property licensed under that agreement. Prior to

the divestiture, the Trademark License Agreement shall, with respect to the "Z-Wire" trademark,

Serial No. 78,658,023, be superseded by the new Z-Wire trademark license described in Section

IV(E) above.

## X. Affidavits

A.    Within twenty (20) calendar days of the filing of the Complaint in this matter, and

every thirty (30) calendar days thereafter until the divestiture has been completed under Section

IV or V, defendants shall deliver to the United States an affidavit as to the fact and manner of its

compliance with Section IV or V of this Final Judgment. Each such affidavit with respect to

Section IV shall include the name, address, and telephone number of each person who, during the

preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring,

entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Andes Holdings, and shall describe in detail each contact with any such person during that period. Each such affidavit with respect to Section IV shall also include a description of the efforts defendants have taken to solicit buyers for the Andes Holdings, and to provide required information to prospective acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest the Andes Holdings until one year after such divestiture has been completed.

## XI. Compliance Inspection

A.      For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States,

14

shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

 (1) access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants, relating to any matters contained in this Final Judgment; and

 (2) to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

 B. Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

 C. No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

 D. If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or

15

documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal

Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to

claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United

States shall give defendants ten (10) calendar days notice prior to divulging such material in any

legal proceeding (other than a grand jury proceeding).

## XII. Restrictions on Acquisition

Defendants may not reacquire all or any part of Andes or the Andes Holdings within the

term of this Final Judgment, unless: 1) Defendants have, not earlier than the date three years after

the Andes Holdings are divested, filed a Notification and Report required by the Hart-Scott-

Rodino Antitrust Improvements Act of 1976, and all applicable waiting periods under that Act

have expired, *or;* 2) if no such Notification and Report is required, defendants have, not earlier

than the date three years after the Andes Holdings are divested, provided written notice to the

United States containing information equivalent to that required in a Hart-Scott-Rodino

Notification and Report, and either thirty days thereafter the United States has not issued a

request for further information and documents, or, if the United States has issued such a further

request, thirty days have expired since the date on which defendants certify that they have

substantially complied with that further request, *and;* 3) in either or both of the preceding cases,

the United States has not objected in writing to the reacquisition. Provided, further, that the

Andes Holdings are deemed to include any license defendants might acquire to use any part of

the Z-Wire IP for Drop Cable.  Nothing in this Final Judgment affects any ability defendants

may otherwise have to acquire any parts of Andes' business that solely concern products other

than Drop Cable.

16

## XIII.  Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV.  Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XV.  Public Interest Determination

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

**Date:** _____

Court approval subject to procedures

of Antitrust Procedures and Penalties

Act, 15 U.S.C. § 16

_____

**United States District Judge**

17